DENNIS J. HERRERA, State Bar #139669
City Attorney
MEREDITH B. OSBORN, State Bar #250467
Chief Trial Deputy
RAYMOND R. ROLLAN, State Bar #304548
Deputy City Attorney
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:    (415) 554-3888
Facsimile:    (415) 554-3837
E-Mail:       raymond.rollan@sfcityatty.org

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DACARI SPIERS,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO; AND DOES 1-50 INDIVIDUALLY AND IN OFFICIAL CAPACITIES AS POLICE OFFICERS FOR THE CITY AND COUNTY OF SAN FRANCISCO, INCLUSIVE,<br><br>　　　　Defendants. | Case No. 20-CV-01357-JSC<br><br>**DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S MOTION TO VACATE THE TRIAL DATE AND STAY THE CIVIL PROCEEDING**<br><br>Hearing Date:　January 21, 2021<br>Time:　　　　 9:00 a.m.<br>Place:　　　　Zoom |

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 21, 2021, at 9:00 a.m. in the United States District Court, 450 Golden Gate Ave, San Francisco, California, Defendant City and County of San Francisco will move for an order vacating the trial date and related dates and staying the civil matter pending

1  resolution of a recently initiated criminal proceeding against San Francisco Police Department Officer
2  Terrace Stangel based on the same incident as that which underlies the present action.  Defendant
3  bases this motion on this notice, the accompanying memorandum of points and authorities, the
4  declaration of Nicole Pifari, Esq., and the pleadings and papers on file in this action, and such
5  argument as may be heard.

7  Dated:  December 17, 2020

DENNIS J. HERRERA
City Attorney
MEREDITH B. OSBORN
Chief Trial Deputy
RAYMOND R. ROLLAN
Deputy City Attorneys


By: /s/ Raymond R. Rollan
     RAYMOND R. ROLLAN

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendant moves for an order vacating the current trial date and staying the civil case due to the filing of felony charges by the San Francisco District Attorney against San Francisco Police Department officer Terrance Stangel ("Stangel") on December 14, 2020 for the same conduct that is the basis of this civil action.  Stangel is no longer able to participate in discovery in this civil action without forfeiting his rights under the Fifth Amendment.  Until the criminal proceedings are resolved, Stangel will invoke his Fifth Amendment right against compelled self-incrimination and refuse to submit to a deposition in this civil action, impeding the ability of all Defendants to fully defend themselves in this action. [1]  This will impede the ability of the Defendants with derivative liability from Stangel to defend themselves in this case.

Furthermore, the present motion seeks a stay of the civil action so that the parallel criminal proceeding can be completed without interference.  Courts recognize the substantial public interest in maintaining the integrity of criminal proceedings until they can be concluded, and courts accordingly grant stays under these circumstances.

This civil suit arises from an encounter between SFPD officers, Dacari Spiers, and Breonna Richard that occurred on October 6, 2019 at or near the intersection Baker Street and Powell Street in San Francisco.  Spiers alleges that he was consoling his girlfriend Richard, who was upset about a lost wallet, when San Francisco police officers, including Officer Stangel, suddenly arrived and without notice or justification, and began beating Plaintiff with their department issued batons.  (Compl. ¶¶ 18-23.)  Spiers also alleges that while he was admitted to Saint Francis Memorial Hospital, San Francisco police officers entered Spiers' room on multiple occasions and harassed and attempted to intimidate him.  (*Id.* at ¶ 35.)  Spiers also alleges that while he was in the hospital, officers fabricated a story about domestic violence between Spiers and Richard, resulting in an unjustified emergency protective order against Plaintiff.  (*Id.* at ¶¶ 35-37.)

---

[1] See Declaration of Nicole Pifari, ¶ 4.

# ARGUMENT

The Court must vacate the trial date and issue a stay of the civil case. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936. The Court may "defer [] civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seem [ ] to require such action." *United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970; *U.S. v. Honeywell Int'l, Inc.*, 20 F. Supp. 3d 129, 132 (D.D. Cir. 2013); *Landis*, 299 U.S. at 254.

## I. THIS COURT SHOULD STAY THE PROCEEDINGS IN THIS ACTION.

### A. The Parallel Criminal Proceedings Present Serious Fifth Amendment Concerns

The first question for a court to consider when determining whether to stay civil proceedings in deference to parallel criminal proceedings arising out of the same facts is "the extent to which the defendant's Fifth Amendment rights are implicated." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (quoting *Federal Savings and Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989)). "[T]he strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *S.E.C. v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375–76 (D.C. Cir. 1980) (noting that a stay would be appropriate where the civil proceeding entirely or significantly intersects with the criminal proceeding); *see also Roberts v. Brown*, No. 13-CV-7461-ODW, 2014 WL 3503094, at *2 (C.D. Cal. July 14, 2014) ("[T]here is a strong case in favor of a stay after a grand jury returns a criminal indictment and where there is a large degree of overlap between the facts involved in both cases."). Because Stangel is being criminally prosecuted and civilly sued for substantially similar conduct, he faces a dilemma: he has a powerful incentive to invoke his Fifth Amendment rights from compelled self-incrimination. At the same time, if he exercises that right, he cannot adequately defend himself in the civil proceeding, and the trier of fact may draw an adverse inference. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).

That adverse inference will prejudice Stangel as his criminal defense attorneys will likely counsel him to exercise his Fifth Amendment rights, and to not provide testimony—or limit his

testimony—in the civil case until the criminal prosecution is concluded. Until the criminal prosecution is resolved, Stangel cannot participate in civil discovery related to many of the issues alleged in the civil complaint. Denying a stay will force him to either waive his Fifth Amendment rights—or to invoke his rights and face adverse inferences in the civil case. *See Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007) ("Courts are afforded th[e] discretion [to grant a stay] because the denial of a stay could impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case.").

Moreover, the prejudicial effect of any such adverse inferences will not stop with Stangel; it will extend to the other Defendant officers and the City. Although not criminally prosecuted, the other civil officers in this case will be prejudiced by the negative inference jurors may draw from Stangel's exercise of his Fifth Amendment rights.

Plaintiff will likely argue that discovery unrelated to Stangel's use of force should proceed regardless of the criminal proceedings. This argument is unavailing. All of Plaintiff's claims in this case arise from the "same nucleus of facts" pertaining to the officers' response to a call regarding a domestic violence dispute, the subsequent physical altercation between the parties, and action taken by the department to prevent further harm from occurring  Plaintiff cannot make the argument that the allegations arising from the October 6, 2019 are separate and distinct from the alleged criminal activity that forms the basis of the criminal proceeding. *See McCormick v. Rexroth*, No. C09-4188 JF, 2010 WL 934242, at *2 (N.D. Cal. Mar. 15, 2010).

Imposing a stay of discovery in this civil action is appropriate to safeguard Stangel's Fifth Amendment rights, and will prevent prejudice in both the civil and the criminal cases.

### B. The Other *Keating* Factors Warrant a Stay of the Case

In determining whether to stay discovery, the Court should consider whether the Fifth Amendment is implicated, as well as the following five factors:

> "(1) the interest of the plaintiffs in proceeding expeditiously with [the civil] litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may

impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation."

*Keating*, 45 F.3d at 324-25 (internal citation omitted).  A stay is necessary in this case.

### 1. The Potential Prejudice to Plaintiff Is Minimal and Does Not Weigh Against a Stay.

Although Plaintiff has an interest in proceeding expeditiously, this case does not represent the sort of prejudice that would warrant denying a stay because Plaintiff's ability to litigate his case will not be negatively impacted.  "Courts have also found prejudice to a plaintiff where a stay of discovery might result in his inability to identify other potential defendants, or where a stay may impact his ability to locate and present favorable evidence." *Petrov v. Alameda Cty.,* No. 16-CV-04323-YGR, 2016 WL 6563355, at *4 (N.D. Cal. Nov. 4, 2016) (internal citations omitted).  Here, however, Plaintiff has already conducted significant discovery and the filed criminal charges against Stangel will involve many of the same witnesses presenting similar testimony, thus reducing the danger that any testimony will be lost as a result of the stay.  *see McCormick v. Rexroth,* No. C 09-4188 JF, 2010 WL 934242, at *3 (N.D. Cal. Mar. 15, 2010) ("[T]he fact that the witnesses for the two proceedings are likely to include many of the same people providing much of the same testimony should reduce the danger that any testimony will be lost as a result of the stay.").  Plaintiff's counsel cannot credibly argue that their ability to identify defendants or gather evidence to support their case will in any way be diminished by the stay and can only point to their interest to have the proceeding resolved quickly so that their client can potentially recover damages.

Plaintiff's likely argument based on the prejudicial effect of waiting is further complicated by the current COVID-19 global health crisis.  Trial in this matter is currently set in July of 2021, which is before the date that public health officials project it will become safe for Americans to gather in groups again.  A civil trial of this nature will require the assembly of a large jury pool and for a jury to ultimately spend several weeks in the courtroom with a large number of court staff, attorneys, paralegals, witnesses, and potential observers.  In is unlikely that such gatherings will be safe from a public health perspective and even if safety is not an issue the court will be backlogged by criminal matters that take priority over civil cases.  Additionally, the jury pool may be unfairly narrowed

because it will either consist solely of people who were given priority on the issuance of vaccines, or people who do not believe COVID-19 poses a threat to their health. All things considered, it is unlikely that Plaintiff's case can proceed to trial in July of 2021 under any set of events, so the prejudicial impact of a stay is less relevant than under a normal calculus.

### 2. Stangel is Burdened by Having to Choose Between Exercising His Fifth Amendment Rights and Defending Himself in a Civil Action.

The second *Keating* factor, which was analyzed in Section A above, favors a stay. Stangel faces felony charges, including assault and battery, for the exact conduct that is the subject of this civil suit. This civil proceeding implicates Stangel's Fifth Amendment rights to a significant degree. Allowing this civil case to move forward concurrently with the criminal prosecution could result in an adverse inference. This inference would also affect Defendants who have derivative liability from Stangel.

In addition, absent a stay, Stangel would be forced to disclose the basis of his criminal defense. Furthermore, the scope of criminal discovery would be significantly expanded by the parallel civil action. These two concerns have been recognized as supporting a stay in similar cases. *Dresser,* 628 F.2d at 1375–76.

Unquestionably, forcing Stangel to refuse to answer deposition questions because the answers may incriminate him is prejudice of the highest degree. In comparison, any countervailing interests based on the general notion of efficiency pales in comparison. Stangel's interests here far outweigh Plaintiff's interests in taking discovery related to the officers.

### 3. Imposing a Stay will Result in the Efficient Use of Judicial Resources

The third *Keating* factor—court convenience and judicial efficiency—also favors a stay. "The Court has an interest in managing its cases efficiently." *McCormick, supra,* 2010 WL 934242, at *2. While expeditious resolution of cases is preferred, "a number of courts have concluded that staying a parallel civil proceeding in its early stages may prove more efficient in the long-run." *S.E.C. v. Alexander*, No. 10-CV-04535 LHK, 2010 WL 5388000, at *5 (N.D. Cal. Dec. 22, 2010. The outcome of the criminal case will likely streamline civil discovery. For example, there are more than fifteen officers who responded to the scene. These officers will likely be called as witnesses in the criminal

trial. Additionally, many deposition topics, such as Police Department policies, training, and Stangel's disciplinary history, would likely end up being unnecessary, because witnesses will have given sworn testimony in the criminal case.

trial. Additionally, many deposition topics, such as Police Department policies, training, and Stangel's disciplinary history, would likely end up being unnecessary, because witnesses will have given sworn testimony in the criminal case.

### 4. Interests of Non-Parties

The fourth *Keating* factor-- interests of non-parties--weigh in favor of a stay. Specifically, the third party witnesses in this case will likely be called as witnesses in the criminal matter, possibly obviating the need to subject them to deposition in the civil case.

### 5. Interests of the Public

The fifth *Keating* factor also favors a stay. "The public has an interest in ensuring that the criminal process is not subverted by ongoing civil cases." *Douglas v. United States*, Nos. C 03-04518 JW, C 04-05357 JW, 2006 WL 2038375, at *6 (N.D. Cal. July 17, 2006). Further, "the public interest is furthered by a stay because the public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant." *Jones v. Conte*, No. C 045312S1, 2005 WL 1287017, at *2 (N.D. Cal. Apr. 19, 2005.); *see also Thissel v. Murphy*, Case No. 15-cv-05937-RS, 2017 WL 6945402, at *3 (N.D. Cal. Apr. 4, 2017).

## CONCLUSION

The *Keating* factors warrant a stay of the civil proceedings and that the trial date be vacated. The law does not require Stangel to be forced to choose between defending himself in a criminal action and in a civil action solely to accommodate Plaintiff's wish to proceed expeditiously. Given that trial is approximately seven months away, it is highly unlikely that the criminal matter will be resolved and it will be necessary to vacate the currently set trial date.

Dated: November 15, 2020

            DENNIS J. HERRERA
            City Attorney
            MEREDITH B. OSBORN
            Chief Trial Deputy
            RAYMOND R. ROLLAN
            Deputy City Attorney

           By: */s/ Raymond R. Rollan*
            RAYMOND R. ROLLAN

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO