JAMIR DAVIS, Esq. SBN 98041 PRO HAC VICE
**J. DAVIS LAW FIRM, PLLC**
P.O. BOX 122123
COVINGTON, KY 41011
TELE: 859-750-5033
JDAVISLAWKY@GMAIL.COM

MICHAEL R. SEVILLE, Esq. SBN 278164
CURTIS L. BRIGGS, Esq. SBN 284190
**SEVILLE BRIGGS, LLP**
3330 GEARY BLVD. 3RD FLOOR, EAST
SAN FRANCISCO, CA 94118
TELE: 415-324-8733
MICHAEL@SEVILLEBRIGGS.COM
CURTIS@SEVILLEBRIGGS.COM

ATTORNEYS FOR PLAINTIFF

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DACARI SPIERS,<br><br>Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO; and DOES 1-50 individually and in official capacities as police officers for the City and County of San Francisco, inclusive.<br><br>Defendant. | CASE NO.  20-cv-01357-JSC (JCS)<br><br>**PLATINTIFF'S REPLY TO DEFNEDANDT'S OPPOSITION TO CHALLENGE CONFIDENTIALITY AND MOTION FOR ATTORNEYS' FEES**<br><br>**Hearing Date: January 21, 2021<br>Time: 9:00 a.m.<br>Place: Zoom** |

## **INTRODUCTION**

On the night of October 6, 2019, the Defendant and its agents acted with recklessness and brutally attacked Plaintiff with hands, feet and baton strikes causing permanent physical, mental, and

1

*PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION*
*SPIERS V. CITY AND COUNTY OF SAN FRANCISCO; DOES 1-50*

emotional damage to Plaintiff. On October 9, 2019 Defendant continued its recklessness by serving Plaintiff with a baseless emergency protective order as he was in his hospital bed recovering from surgery. At that point, Plaintiff thought the attack on his character was over, but again, on the evening of December 15, 2020 the Defendant persisted in its need to harass Plaintiff by blatantly disregarding a Protective Order approved by the Court and releasing a 911 call and a limited amounts of the Body Worn Camera (BWC) footage to intentionally paint Plaintiff in an unfavorable light. Multiple major news outlets televised the release of the 911 call and BWC footage as thousands of viewers watched without any context. These actions by Defendant have cause a bias against Plaintiff.  Defendant's Counsel is now attempting to add to that bias by keeping other relevant evidence from being released to the public. The San Francisco Police Department (SFPD) and its Counsel have acted with impunity and are attempting make a mockery of Plaintiff and the Court. The Defendant must be held accountable. Therefore, Plaintiff' files this reply and also motions to seek sanctions and reimbursement of expenses, including reasonable attorneys' fees, incurred in bringing this motion and time expended responding to multiple media inquiries about the false narrative that was painted by Defendant. In an attempted to keep Attorney's fees low and in the interest of judicial efficiency Plaintiff's Counsel has made a good faith effort to manage this case without intervention of the Court. However, purposeful delay tactics and continued deception and dishonesty by Defendant and its Counsel have force Plaintiff to file this motion with the Court.

## **PROCEDURAL HISTORY**

On December 2, 2020 Plaintiff's Counsel met and conferred with Defendant's Counsel concerning the confidential designations of the BWC footage. During that discussion, Defendant's Counsel argued that the BWC footage should not be released because it could potentially bias a jury. At that meeting the Parties could not come to an agreement on what information should be released and agreed to bring the matter before the Court. On December 10, 2020 Plaintiff filed a motion to challenging the confidentiality of the BWC footage and requested a hearing before the Court to determine what should be released. On December 15, 2020, without notice or warning to the Plaintiff, Defendant released the 911 call which was followed by limited segments of the BWC footage. The release by Defendant excluded all subsequent witness statements and other evidence all of which confirmed that there had not been any domestic violence between the Plaintiff and his girlfriend and

that captured the recovery of Plaintiff's girlfriend's stolen wallet. The BWC footage published by Defendant also excluded witness statements from Plaintiff's girlfriend attesting to the fact that she was not injured by Plaintiff and Police where completely unjustified in their attack of Plaintiff. On December 16, 2020 Plaintiff's Counsel emailed Defendant's Counsel to notify Defendant's Counsel that the BWC footage had been released to the public. At that time Plaintiff's Counsel requested that Defendant agree to remove the confidential designation from the remaining BWC footage because of the bias caused by limited evidence released.  On or about December 18, 2020 Defendant's Counsel denied Plaintiff's request via an email. As a result, Plaintiff's Counsel spent multiple hours managing its clients concerns and dealing with unexpected media attention which questioned Plaintiff's innocence. Plaintiff now files this reply motion and prays for relief.

## ARGUMENT

**A. Sacatons Must Be Awarded in the Interest of Justice**

In the present action, there are two relevant legal bases on which the Court can rely in awarding attorney's fees as a sanction. Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The court may impose sanctions under section 1927 sua sponte. Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc., 210 F.3d 1112, 1118 (9th Cir. 2000). Second, courts have inherent power to issue sanctions as necessary to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases. "Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1992) (citation and quotation marks omitted). The court may impose sanctions sua sponte under this authority. Roadway Exp., Inc. v. Piper, 447 U.S. 752, 765 (1980).

**1. The Defendant Must be Sanctioned for its Reckless Act in Causing Unnecessary Expense and Delay and Harassing its Opponent**

Under 28 U.S.C. § 1927, the court may find bad faith "when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent," Estate of Bias ex rel. Chargualaf v. Winkler, 792 F.2d 858, 860 (9th Cir. 1986), or when

litigation conduct is "undertaken to increase expenses or delay," New Alaska Dev. Corp. v. Guetschow, 869 F.2d 1298, 1306 (9th Cir. 1989). Sanchez v. Bank of America, No. 09-5574 SC, at *3-4 (N.D. Cal. June 10, 2010).  On December 16, 2020 Plaintiff's Counsel emailed Defendants Counsel to notify Defendant's Counsel that the Body Worn Camera footage had been released by the Defendant. At that time Plaintiff's Counsel requested that Defendant agree to the release of all of the Body Worn Camera footage because of the bias caused by limited evidence released to the public.[1] Instead of Defendant agreeing to that compromise and allowing Plaintiff to withdraw its motion.  On or about December 18, 2020 Defendant's Counsel denied Plaintiff's request via an email with out valid reason. Because Defendants Counsel would not concede to the release the remaining evidence the narrative that they have attempted to paint, of our client being involved in some type of domestic dispute with his girlfriend, has solidified in the minds of the public. In fact, Defendant went as far as to post the evidence on its social media platform to illicit comments from the public, many of which confirm Plaintiff's concerns. (Exhibit) The comments show that many members of the public have already drawn conclusions about Plaintiff because of the limited evidence that was presented and lack of context.

    Now, Defendant's Counsel frivolously argues that the remaining BWC footage should remain confidential because its release could potentially taint a jury pool when Defendant has already released portions of the BWC footage to the public. These acts by Defendant have cause Plaintiff to dedicate hours of time to write this motion and manage unexpected media attention that have brought into question the false accusation of domestic violence and the 911 call. If the Defendant would have released all the BWC footage or at least allowed Plaintiff to do so we would not be in this predicament. The reckless and harassing acts of the Defendant has cause irreparable harm to Plaintiff and this civil litigation. Therefore, Defendant should be sanctioned in accordance with 28 U.S.C. § 1927 for its behavior along with its frivolous Opposition to Plaintiff's Motion to Challenge Confidentiality.

---

[1] It was Plaintiff's intention to withdraw its initial motion to the Court if Defendant agreed to allow Plaintiff to release the remaining BWC footage.

**2. The Defendant's Act of Depriving the Court of Jurisdiction of This Matter by Releasing the BWC Footage Without a Court Order and Other Tactics of Delay, Oppression, and Harassment are Sanctionable Conduct.**

Federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them. In invoking the inherent power to punish conduct which abuses the judicial process, a court must exercise discretion in fashioning an appropriate sanction, which may range from dismissal of a lawsuit to an assessment of attorney's fees. Although the "American Rule" prohibits the shifting of attorney's fees in most cases, see Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 259, an exception allows federal courts to exercise their inherent power to assess such fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Chambers v. Nasco, Inc., 501 U.S. 32, 33 (1991). "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates."" Chambers v. Nasco, Inc., 501 U.S. 32, 43 (1991) When there is bad faith conduct during litigation that could be adequately sanctioned under the rules, the court ordinarily should rely on the rules, rather than the inherent power. But if, in the informed discretion of the court, neither the statute nor the rules are up to the task, the court may safely rely on its inherent power.

This is the fourth documented instance of delay oppression or harassment by Defendant to negatively impact proceedings or deprive Plaintiff of a fair trail. As documented in our initial motion, the first instance of bad-faith conduct occurred when Defendant intentionally mislead Plaintiff's Counsel to believe that the Protective Order presented in this matter was the Model Protective Order referenced by the Court in a Case Management Conference hearing. Second, the Defendant disobeyed Settlement Conference Standing Orders by not providing a settlement offer prior to negotiations and then failed to negotiate in good faith. Third, On December 2, 2020 the Defendant refused to comply with reasonable fact discovery requests, failed to cite any authority and verbally agreed to participate in motion practice to settle the dispute, only to later file a motion to set aside Plaintiff's Motion to Compel.  Finally, Defendant has negatively impacted the jury pool by prematurely releasing confidential evidence to public and now has the audacity to argue that the remaining evidence should not be released. The actions by Defendant define bad faith conduct during litigation and have cause

Plaintiff and Plaintiff's Counsel actual harm. Plaintiffs' expenses through December 31, 2020, for the time expended to manage confidentiality challenge total $7,650.00. Plaintiff respectfully requests that the Court sanction Defendant to pay attorney's fees in the amount to be determined after the January 21, 2020 hearing.

**B. Good Cause Does Not Exist to Maintain Confidentiality of the Subject Records.**

1. Defendant Will Not Suffer A Particularized Harm

The Defendant's argument is absurd. It argues that if the remaining BWC footage is released it has the very real potential to taint a jury pool. However, the Defendant has already released portions of the video for exactly that purpose and has achieved its intended affect. The Defendant cites *Estate of Sanchez*, but the facts of that case are not remotely like what has occurred here because in *Estate of Sanchez* there was not a premature release of evidence without Court approval. Moreover, the Defendant also argues that the public release of the "Subject Records places it beyond the court's control… for purposes that may not be consistent with fairness" this argument is ridiculous, to say the least, because the Defendant is actively participating in the same behavior it claims it wants to prevent. The Defendant's timing and edits of the evidence were calculated to paint it in the most favorable light and to leave an audience wondering was there actually any domestic violence. The video is posted on the SFPD website and requires that viewers listen to the 911 call prior to watching the video and provides no other context to viewers. Therefore, the release of the remaining BWC footage will not cause harm to the Defendant or Stangel but only hope to restore some of the irreparable harm to Plaintiff's character and civil case already caused by Defendants reckless and negligent actions.

2. The Defendant Does not have a Privacy Interest

In *Gonzales,* this Court held that when events take place in public, are described in a public complaint and the officer is a public employee that there no public interest in confidentiality. The Court in *Gonzales*, reasoned that a job as a police officer requires that an officer be in the "public eye every day" and therefore there is no public interest in keeping it confidential. *Gonzales v. City of San*

*Jose*, No. 19-cv-08195-NC, at *6 (N.D. Cal. July 31, 2020). Here the only legitimate position that the Defendant has taken is that Stangel has an interest now that there have been criminal charges brought against him because there is a fear of a compromise of the integrity of the criminal proceedings. Plaintiff agrees that addition of the criminal proceedings does change the outlook of this motion. However, it does not mean that Stengel's rights should take priority over the Plaintiff's right to a fair trail. The release of the limited evidence by SFPD has drastically shifted the momentum of this case and the remaining BWC must be released in an attempt to at least balance Plaintiff's interest.

Second, Defendant argues that the release of information to police oversight agency like the Department of Justice is for the purpose of harassing, obstructing, or compromising the integrity of the parallel criminal proceeding, when that is the furthest from the truth. The need for police accountability is at a all time high and Defendant itself is a party in this matter because as documented in a 2016 Department of Justice (DOJ) report SFPD was required to make over 250 changes to policies and practices to keep incidences like this from occurring. A large portion of Plaintiff's Monell claim will require Plaintiff to perform an analysis of that report to make it case. Therefore, the request to release the evidence to the Department of Justice is for the purpose of harassment and is completely unrelated to Stangle's criminal proceedings. As the evidence has been presented now by Defendant the DOJ and other oversite agencies may be uninterested in reviewing the facts of the case because of the lack of evidence readily available. Therefore, the remaining BWC footage must be released.

Third, The Defendant claims that criminal proceeding will elucidate the facts of the incident and therefore there is no need for release of the remaining evidence. This is just not true. The as stated above a major part of Plaintiff's claim are directed at the SFPD and the policy's and procedures that it implemented at the time of the incident, which will not be a focus of the criminal proceeding. Moreover, a major part of this civil proceeding is the harassment and intimidation by way of a fraudulent emergency protective order that was severed to Plaintiff in the hospital after his surgery. None of that information will be a part of the criminal trial.

Fourth, now that criminal proceeding has commenced against Stangle the facts of, *Harmon v. City of Santa Clara, 323 F.R.D. 617, 624 (N.D. Cal. 2018)* are some what distinguishable. However,

the reasoning is still applicable because " [l]aw enforcement's use of body cameras" is " an issue of importance to the public generally, and to public health and safety specifically." Harmon v. City of Santa Clara, 323 F.R.D. 617, 625 (N.D. Cal. 2018 Here, we are specifically asking that the public be allowed to see all the BWC footage that was taken on October 6, 2019 and October 9, 2019 because it is of high interest to the public. All the footage taken on October 9, 2020 does not involve Stangel and most of the video on October 6, 2019 excludes Stangle as well.

The Fifth factor is not at issue.

Sixth, Defendant claims that Plaintiff has not expressed a bias, that is because the bias is obvious, the longer the facts of this case are hidden from the public the more bias a jury will be against Plaintiff. As of today, Defendants have attempted to and have successfully controlled the narrative by offering piecemeal portions of the evidence to the public. In the interest of justice, the remaining BWC footage must be released.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court enter an order to remove the confidentiality designations on all BWC footage. Plaintiff further respectfully requests that the Court order Sanction in an amount necessary of Defendant to pay attorney's fees in the amount to be determined after the hearing.

Date: December 31, 2020                                    J. Davis Law Firm, PLLC

                                                           /s/ Jamir Davis
                                                           Jamir Davis
                                                           Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on December 31, 2020, I filed a true and correct copy of the foregoing document electronically using the Courts ECF system, which will serve an electronic copy on the following counsels of record at their registered ECF electronic mail address:

Raymond R. Rollan
Raymond.Rollan@sfcityatty.org
Deputy City Attorney
Office of City Attorney Dennis Herrera
(415) 554-3888 Direct
www.sfcityattorney.org

                                          /s/Jamir Davis
                                          JAMIR DAVIS
                                          Counsel for Plaintiff